UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| V. | ) | No. 2:05-CR-105 |
| | ) | |
| DARRELL LYNN TIPTON | ) | |

**REPORT AND RECOMMENDATION**

Defendant has filed a motion to dismiss the indictment against him based upon a delay in prosecution. (Doc. 16). This motion has been referred to the United States Magistrate Judge under the standing orders of this Court and pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on November 24, 2009. The facts are undisputed.

Some time prior to October 2005, the state of Missouri issued a warrant for defendant's arrest. Shortly thereafter, a warrant was issued at the behest of the United States for defendant's unlawful flight to avoid prosecution.

Defendant was found and arrested in Unicoi County, Tennessee, on October 26, 2005. Shortly thereafter, he was transported to the state of Missouri to answer the charges filed there against him.

On December 13, 2005, the indictment now pending against defendant in this court was returned by the Grand Jury, charging defendant as a convicted felon in possession of firearms and ammunition.

The criminal justice system in the state of Missouri proceeded somewhat leisurely as far as prosecuting its charges against defendant. He was sentenced in Missouri on May 1,

2009. This court was not apprised of when he was tried and convicted, but presumably it was a relatively short time prior to May 1, 2009.

The United States Attorneys Office in the Eastern District of Tennessee was monitoring the progress of the Missouri prosecution. The United States Attorneys Office became aware of defendant's sentencing in Missouri within that same week. After learning that defendant was to be incarcerated at the Fulton Reception and Diagnostic Center in Fulton, Missouri, the United States Attorneys Office requested that this court issue a writ of habeas corpus *ad prosequendum* to the warden of that facility. That writ was issued on May 26, 2009.

On June 26, 2009, defendant, *pro se,* filed a "Request Fast Speedy Trial" [sic], Document 5. In response to that *pro se* motion or request, this court filed its order which advised defendant that a writ of habeas corpus *ad prosequendum* had already been issued for him, and that his initial appearance was scheduled for August 28, 2009.

Defendant argues that the delay between his indictment on December 13, 2005, and his initial appearance on that indictment on August 28, 2009, was prejudicial and violated his right to a speedy trial and due process.

The due process clause generally applies to pre-indictment delay; post-indictment delay implicates the Sixth Amendment right to a speedy trial. *United States v. Watford*, 468 F.3d 891, 901 (6th Cir. 2006). Here, defendant was indicted within six or seven weeks of his arrest in Unicoi County and the discovery of the firearms and ammunition. Clearly, there was no pre-indictment delay and that issue warrants no further discussion. The post-

2

indictment delay, however, is another matter entirely. Defendant was indicted in December 2005, and he did not appear before this court until August 2009, approximately forty-five months after his indictment. In *Barker v. Wingo*, 407 U.S. 514 (1972), the Supreme Court held (1) the right to a speedy trial is more vague than other constitutional rights and cannot be quantified into a specified number of days or months, and (2) a defendant's claim that he has been denied a speedy trial is subject to a balancing test in which the conduct of both the prosecution and the defendant are weighed. The factors to be considered are: (1) the length of the delay, (2) the reason for that delay, (3) whether the defendant asserted his right to a speedy trial, and (4) any prejudice to the defendant. Each case must be decided on an *ad hoc* basis. *Id.*, 407 U.S. at 530.

The Supreme Court went on to state that: "[t]he length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.*

In a footnote to *Doggett v. United States*, 505 U.S. 647 (1992), the Supreme Court held that "[d]epending on the nature of the charges, the lower courts have generally found post-accusation delay 'presumptively prejudicial' at least as it approaches one year." 505 U.S. at 652, n.1.

It should be noted at this juncture that "presumptively prejudicial" does not in any way shift the burden of proof from the defendant to the government, or create a presumption (in the usual sense) which the government must rebut. Rather, by "presumptively prejudicial," the Supreme Court was referring to the "triggering mechanism" of the first factor, *viz.*, the

3

length of the delay. If the delay is not presumptively prejudicial, the court must not inquire into the remaining three factors. In other words, if the delay is not presumptively prejudicial, then by definition there is no speedy trial violation. On the other hand, if the delay is presumptively prejudicial, the court must go on to analyze the case under the remaining three factors of *Doggett* to determine if there was a speedy trial violation. *United States v. Graham*, 128 F.3d 372, 374 (6th Cir. 1997).

Three years and nine months elapsed between defendant's indictment and his appearance before this court. Thus, the length of delay was "presumptively prejudicial," which the United States concedes. Accordingly, the court must analyze the remaining three factors of *Doggett* to determine if there was a speedy trial violation.

*THE REASON FOR THE DELAY*

The reason for the United States' delay in bringing defendant before this court is quite simple: it awaited the conclusion of the Missouri prosecution. In other words, the United States government elected to allow the state of Missouri to proceed with, and conclude, its prosecution of defendant before the Department of Justice sought to bring defendant back to this district to stand trial on the pending indictment. The United States' decision in this regard was not motivated by any desire to gain an advantage over defendant; rather, the United States merely decided to defer to Missouri and what it considered to be more serious charges confronting defendant, *viz.*, the Missouri homicide, (or attempted homicide) charges. Nothing gives to a federal court any superior right to prosecute an individual for federal crimes when a state court already has custody of the defendant with respect to charges that

4

were filed prior to the commission of the federal crimes. Stated bluntly, the federal government had no more right to defendant's body for purposes of prosecution than did the state of Missouri. If anything, its right to defendant's presence was inferior or subordinate to the rights of the state of Missouri in that regard:

> Customarily-although certainly not always- the jurisdiction with custody of accused . . . is afforded the first opportunity to prosecute the defendant. This long standing practice is rooted in the respect accorded to a custodial sovereign to resolve its criminal proceedings before relinquishing custody to another jurisdiction. This practice also can be understood in terms of the orderly and efficient prosecution of cases in our dual system of criminal justice.

*United States v. Watford*, 468 F.3d 891, 902 (6th Cir. 2006) [quoting *United States v. Schreane*, 331 F.3d 548].

The forty-five month delay from defendant's indictment to his initial appearance in this court was attributable solely to the United States' willingness to defer to the state of Missouri as far as its pending prosecution of defendant was concerned. The United States in no way was motivated by any desire to gain an advantage over the defendant.

*DID THE DEFENDANT ASSERT HIS RIGHT TO A SPEEDY TRIAL*

Defendant did not know of the federal indictment until the writ of habeas corpus *ad prosequendum* issued from this court to the warden of the Missouri prison where defendant was then incarcerated. He filed his request/motion precisely one month after the issuance of the writ. That was a timely assertion of his right to a speedy trial.

*PREJUDICE TO THE DEFENDANT*

The only prejudice to this defendant is that he faces the prospect of additional

incarceration based upon the pending federal indictment. Beyond this, he did not suggest, much less offer any evidence, that he had suffered any prejudice as a result of the forty-five month delay. He has been incarcerated in Missouri for the entire time and, so far as known, all witnesses with respect to the October 2005 incident are still alive and available to testify.

With regard to any anxiety or apprehension that an individual might claim to suffer as a result of a long-pending prosecution, it must be recalled that defendant was blissfully ignorant of the pending federal indictment until this court issued its writ of habeas corpus *ad prosequendum*.

In short, he has suffered no prejudice as a result of the delay.

*CONCLUSION*

It is respectfully recommended that defendant's motion to dismiss be denied.[1]

                                                    s/ Dennis H. Inman  
                                          United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be filed within ten (10) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1)(B) and (C). *United States v. Walters*, 638 F.2d 947-950 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).