UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| DARRELL TIPTON, )<br>      Petitioner, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>      Respondent. )<br>) | Nos. 2:05CR-105<br>      2:14-CV-61 |

**MEMORANDUM AND ORDER**

Following a jury trial, Darrell Tipton ("petitioner") was found guilty of being a convicted felon in possession of two firearms and ammunition. He was sentenced to 293 months imprisonment which is to be served consecutively to a 124-year state sentence. He has filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. [Doc. 95]. For reasons discussed in this memorandum and order, his motion is DENIED.

**I.    BACKGROUND**

On October 26, 2005, there was an outstanding warrant for petitioner's arrest issued by a Missouri court. There also was a federal warrant for petitioner's arrest for unlawful flight from the state of Missouri to avoid prosecution.[1] On October 26, 2005, the Unicoi County sheriff's office had information that petitioner was at his mother's house in Erwin. Petitioner was considered to be armed and dangerous. In an effort to minimize the possibility of a deadly confrontation and the concomitant risk to innocent people, officers surrounded his mother's house, and then prevailed upon a family member to call the house to tell defendant that officers were on their way to arrest him. Soon after the phone call was made, petitioner and a young man, later learned to be

---

[1] Report and Recommendation, Doc. 30.

1

Abel Lopez, petitioner's nephew, ran from the house. Petitioner was seen carrying a rifle and a backpack[2].

Ignoring the officers' shouts to stop and surrender, petitioner and Lopez sped away in a car driven by Lopez. After a high speed chase of some four miles, the car was stopped.[3] Petitioner was immediately arrested on account of the federal and Missouri warrants. A search of petitioner's person pursuant to his arrest revealed .22 caliber ammunition in his pants pocket.[4] Lopez also was arrested, but the charges were later dismissed when the officers testified before the state judge that Lopez was an unwilling participant in petitioner's flight.[5]

After the vehicle was towed to the sheriff's office, an inventory search was conducted. The rifle, a .22 caliber, was lying in plain view on the rear floorboard. The backpack also was in the rear seat. It was searched and in it was a .22 caliber handgun.[6] Those firearms and the ammunition led to his indictment in this court on December 13, 2005.

Before his indictment in this court, petitioner had been extradited to the state of Missouri to stand trial on the charges pending in that state. In November 2008, he was convicted in a Missouri court of two counts of First Degree Assault, two counts of Armed Criminal Action, and Unlawful Use of a Weapon, and in May 2009, he was sentenced to a total of 124 consecutive years of imprisonment.[7]

On May 26, 2009, this court issued the writ of Habeas Corpus Ad Prosequendum to secure petitioner's presence before this court to stand trial on the 2005 indictment. His initial appearance

---

[2] Tr., Doc. 87, pp. 91 *et seq.*
[3] *Id.*
[4] Tr., Doc. 87, p. 90.
[5] Tr., Doc. 87, p. 114.
[6] Tr., Doc. 87, p. 120-121.
[7] Presentence Report, ¶55.

and arraignment occurred on August 28, 2009.[8]

Attorneys Tim Moore and Nikki Pierce of Federal Defender Services were appointed to represent petitioner. He went to trial on April 6, 2010, and was convicted on April 7. His Guideline Range 235 to 293 months.[9] This court sentenced him to 293 months.[10]

. Petitioner appealed to the Sixth Circuit Court of Appeals, raising three issues: (1) that the delay between his indictment on December 13, 2005 and his initial appearance on August 28, 2009 violated his Sixth Amendment right to a speedy trial; (2) that he was entitled to a new trial because the prosecutor during a sidebar conference referred to "murder warrants" for petitioner's arrest issued by the states of Florida and Missouri which was overheard by the jury; and (3) that this Court abused its discretion by ordering his sentence for the federal conviction to be served consecutively to the sentence imposed by the Missouri court. The Court of Appeals rejected each of his arguments and affirmed his conviction and sentence.[11]

## II. STANDARD OF REVIEW FOR §2255 CLAIMS

This Court must vacate and set aside petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . . ." 28 U.S.C. § 2255. Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the court may summarily dismiss the § 2255 motion under Rule 4.

---

[8] Doc. 7.
[9] Presentence Report, Doc. ¶75.
[10] Judgment, Doc. 80.
[11] Opinion, Doc. 89.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo,* 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson,* 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994). See also *United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying Brecht to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F. 2d 1039, 1041 (6th Cir.), cert. denied, 439 U.S. 988 (1978). To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir.), cert. denied, 517 U.S. 1200 (1996).

In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982). When a § 2255 Petitioner claims he was denied his sixth amendment right to effective assistance of counsel, it is noted that an attorney is presumed to have provided effective assistance, and the Petitioner bears the burden of showing that the attorney did not, *Mason v. Mitchell*, 320 F.3d 604,

4

616-17 (6th Cir. 2003). Petitioner must prove that specific acts or omissions by his attorney were deficient and that the attorney failed to provide "reasonably effective assistance," *Strickland v. Washington,* 466 U.S. 668, 687 (1987), which is measured by "prevailing professional norms," *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). If Petitioner crosses this evidentiary hurdle, he must then show "a reasonable probability that, but for [the attorney's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. In other words, he must show that he was prejudiced by the attorney's deficient representation:

> To succeed on an ineffective assistance claim, a defendant must show that counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). [A court's] review of counsel's performance is "highly deferential." Id. at 689, 104 S.Ct. 2052. [The court must] "judge the reasonableness of of the time of counsel's conduct." Id. at 690, 104 S.Ct. 2052. The defendant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. To establish "prejudice," a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. 2052. "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. ——, 131 S.Ct. 770, 792, 178 L.Ed.2d 624 (2011). And, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." Strickland, 466 U.S. at 697, 104 S.Ct. 2052.

*Docherty v. United States*, 536 Fed. Appx. 547, 551 (6th. Cir. 2013).

### III. PETITIONER'S CLAIMS

**A.** *Ground One: Evidence was seized pursuant to an unconstitutional search*

There are two independent but equally valid reasons why this claim is meritless. First, it has been procedurally defaulted. Petitioner could have raised this issue in his direct appeal, but he did not. He cannot raise an issue in a collateral attack that could have been raised in a direct appeal, *Sullivan v. United States,* 587 Fed. App'x 935, 942 (6th Cir. 2014). A petitioner

5

can overcome the bar of procedural default only if he can demonstrate either "cause and actual prejudice, or that he is actually innocent," *Bousley v. United States*, 523 U.S. 614, 622 (1998). Petitioner claims actual innocence in his Reply brief.[12] Because he raises a number of claims in that reply, it will be discussed separately in Section IV of this memorandum. Suffice it to say at this point that his claim of actual innocence fails.

Second, petitioner's argument that the evidence-- a .22 caliber rifle, a .22 caliber handgun, and .22 caliber ammunition-- was unconstitutionally seized is simply wrong as a matter of law. After the car in which petitioner fled had been stopped and petitioner arrested, the car was taken to the Unicoi County sheriff's office where an inventory search was performed. In plain view in the back floorboard and seat were the rifle and backpack.[13] The officers were aware petitioner was a convicted felon. As such, they were aware he could not lawfully possess a firearm. The rifle was therefore illegal contraband and in plain view. Contraband in plain view may be seized without a warrant if the officer immediately recognizes its incriminating nature, *United States v. Bradshaw*, 102 F.3d. 204, 210-11 (6th Cir. 1996). Additionally, petitioner had no standing to complain of the search of the car since he did not own it, and he was not driving.[14] *See, Rakas v. Illinois*, 439 U.S. 128 (1978). The warrantless seizure of the rifle was constitutional.

Petitioner was seen carrying the rifle in one hand and the backpack in the other as he bolted from his mother's house.[15] At the very least, since petitioner had been arrested and the sheriff's department thus responsible for the protection of his property, an inventory search of the bag's contents was appropriate, *United States v. McCoy*, 102 F.3d. 239, 240 (6th Cir. 1996).

---

[12] Doc. 101

[13] TR., doc. 87, p.46

[14] A fact noted by the Magistrate Judge in his Report and Recommendation, doc. 29. Moreover, petitioner states in "Ground Two" of his motion that he "was merely a passenger."

[15] Tr., doc. 87, p.42.

Lastly, the ammunition was found in petitioner's pants' pocket after a pat-down search of his person following his removal from the car and his arrest.[16] A warrantless search incident to a lawful arrest is constitutional, *Chimel v. California*, 395 U.S. 752, 762-63 (1979).

**B.**     *Ground Two: Excessive Sentencing*

In his direct appeal, petitioner argued that his sentence was excessive, an argument the Sixth Circuit rejected. He either raised every issue regarding his sentence in his direct appeal, in which event they cannot be raised again in a §2255 motion, , *DuPont v. United States*, 76 F.3d 108 (6th Cir. 1996), or he has procedurally defaulted any arguments which he failed to raise.

**C.**     *Ground Three: Denial of Effective Assistance of Counsel*

Petitioner claims that his attorney allowed inconsistent statements from police; failed to investigate the case; allowed the police to coerce Larry Tipton (petitioner's brother, who was called as a witness by the government); allowed the police to coerce Abel Lopez; failed to call witnesses at trial; failed to challenge the search of the vehicle without a warrant; and failed to "challenge the prejudice" to petitioner regarding the prosecutor's statement made during a sidebar conference which he suggests was overheard by the jury.

There is nothing in the record which remotely supports petitioner's assertions that his attorney "allowed" inconsistent statements from the police; or that his attorney failed to investigate the case; or that the police coerced either Larry Tipton or Abel Lopez, much less that his counsel allowed them to do so. Neither is there anything in evidence apart from petitioner's *ipse dixit* that his attorney failed to call any witnesses at trial who could have offered relevant testimony beneficial to petitioner. Conclusory assertions do not justify an evidentiary hearing, *Green v. Wingo, supra.*

---

[16] Tr., Doc. 87, p.90.

7

As for challenging the search of the vehicle, petitioner's attorney did so; he filed a motion to suppress and thereafter filed an objection to the magistrate judge's report and recommendation that it be denied. Although his attorney did not raise the denial of his motion to suppress on appeal,[17] his counsel hardly can be criticized for failing to present an argument to the court of appeals which would have been patently frivolous. Appellate counsel cannot be found to be ineffective for "failure to raise an issue that lacks merit." *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir.2001). Furthermore, the *Strickland* analysis "does not require an attorney to raise every non-frivolous issue on appeal." *Caver v. Straub*, 349 F.3d 340, 348–49 (6th Cir.2003).

Lastly, although petitioner's attorney did remonstrate with the prosecuting attorney about speaking too loudly during the sidebar conference, there is no evidence that the jury overheard any part of the conversation. Contrary to defense counsel's statement that "everyone in the courtroom" could overhear the Assistant United States Attorney's remark about outstanding murder warrants , that simply was not so. This court had no concern that the jury heard any part of the sidebar conference. But of more importance is the fact that the "sidebar conference issue" was raised on direct appeal, concerning which the Court of Appeals said, "[E]ven if one assumes that the comment was improper, and further assumes that the jury heard it, the isolated comment—accidentally placed before the jury—was not sufficiently flagrant to render Tipton's trial fundamentally unfair."[18] The Court of Appeals disposed of the issue of the sidebar conference, and it may not be re-litigated in a §2255 proceeding, *DuPont, supra.*

**D.** *Ground Four: Right to Speedy Trial*

Petitioner raised this issue on direct appeal, and it cannot be raised again in a collateral attack, *DuPont, supra.*

---

[17] Opinion of Court of Appeals, Doc. 89, p.2.
[18] *Id.*, p. 4.

8

### E. *"Ground Five"*

Although not entitled as Ground Five, petitioner makes two further claims in paragraph 13 of his motion: that "officers and witnesses lied under oath," and that there was an illegal search of the vehicle.

His claim that the officers and unnamed witnesses committed perjury is a bald conclusory statement with absolutely no indicia of verity. Petitioner is not entitled to an evidentiary hearing based on such unsupported allegations, *O'Malley, supra*.

Petitioner's claim that the guns were seized after an illegal search of the vehicle has already been discussed.

### IV. PETITIONER'S CLAIM OF ACTUAL INNOCENCE (Reply Brief, Doc. 101)

Petitioner argues that the claims he failed to raise on direct appeal are not procedurally defaulted because he is actually innocent of the two gun charges.[19] His claim of actual innocence is based on what he asserts is newly-discovered evidence. According to petitioner, that newly-discovered evidence is certain exculpatory and impeachment *Brady* material the government withheld from him.

The exculpatory and impeachment evidence which petitioner alleges was withheld from him involves his nephew, Abel Lopez. Lopez, at the time of petitioner's arrest in 2005, was 19 years of age.[20] After the car chase ended, Lopez wrote out a statement in which he said that petitioner ran from the house carrying a black bag and a rifle.[21] By the time of petitioner's trial in 2010, Lopez was twenty-four. He was subpoenaed by the government to testify as part of its proof-in-chief. In the five years that elapsed between petitioner's arrest and the trial, Lopez's

---

[19] Actually, his Reply brief addresses only the rifle; he never mentions the pistol in the backpack.
[20] Tr., Doc. 87, p.103, 105
[21] Tr., Doc. 87, p. 107-8.

story changed to some extent -- he testified that he did not remember petitioner leaving the house with a rifle, and that his statement of October 26, 2005 which said otherwise was a lie.[22] Interestingly, he testified that petitioner showed him a .22 pistol the night before,[23] and that when petitioner ran from the house he was carrying a black bag.[24]

It was the Assistant United States Attorney who obviously was somewhat irritated by Lopez's retreat from what he said in his written statement five years earlier. On the other hand, defense counsel had no difficulty in eliciting testimony from Lopez that his written statement was "a lie," and that the Unicoi County law enforcement officers threatened him with criminal prosecution, the suggestion being that he was frightened into giving the statement he did.[25]

The jury could have believed Lopez's trial testimony that there was no rifle, but it did not. Petitioner fails to describe what exculpatory or impeachment evidence was withheld from him. He says only that there was no rifle. His claim that the government possessed *Brady* material it failed to disclose to him has no support anywhere in the record, then or now. And how this is "newly discovered evidence" is lost upon the court; petitioner necessarily learned of all this during his trial, apparently at the same time as the prosecuting attorney learned of it.

What petitioner actually argues is that this court denied his attorney the right to essentially bolster Lopez's testimony that he never saw petitioner with a rifle. After flatly testifying on direct examination that he didn't remember seeing petitioner with a rifle, AUSA Reeves referred Lopez to his 2005 written statement and attempted to get him to admit that his memory was better in 2005 than it was at the time of trial. Lopez nevertheless continued to insist that he never saw a

---

[22] Tr., Doc.87, p. 108,113.
[23] Tr. Doc. 97, p.104.
[24] Tr., Doc. 87, p.106.
[25] Tr., Doc. 87, p.110.

10

rifle.[26] In an apparent effort to lend credence to Lopez's testimony that he never saw a rifle, defense counsel attempted to show that he had testified to that effect in a Missouri court. When Lopez answered that he did not recall so testifying in Missouri, his attorney began reading from a trial transcript. Rather than asking Lopez if he testified to such-and-such before the Missouri court and then referring to the relevant part of the transcript in the event Lopez denied doing so, his counsel merely began reading it. The government's attorney objected, and this court properly sustained the objection.[27] In any event, counsel read enough from the transcript that the jury was aware that Lopez testified in the Missouri proceeding that he did not see petitioner "carrying anything."[28] There clearly was no prejudice.

In conclusion, petitioner has failed to demonstrate that the government withheld any exculpatory or impeachment evidence from him that there is any newly-discovered evidence, or that this court improperly denied him the opportunity to impeach Lopez. He has failed to show actual innocence which would excuse his procedural defaults discussed earlier in this memorandum.

## V. CONCLUSION

Petitioner's conviction and sentencing were not in violation of the Constitution or laws of the United States. His motion, [Doc. 95], is therefore DENIED.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of a certificate of

---

[26] Tr., Doc. 87, p. 108-9.
[27] Tr. Doc. 87, p. 112
[28] Tr., Doc. 87, p. 111.

appealability. *Murphy v. Ohio*, 263 F. 3d 466 (6th Cir. 2001). The District Court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. Id. at 467. Each issue must be considered under the standard set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595 (2000). Id.

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." After reviewing each of Petitioner's claims, the Court finds that reasonable jurists could not conclude that petitioner's claims are adequate to deserve further review. Because petitioner has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.

A separate judgment will enter.


ENTER:


                                                  s/J. RONNIE GREER
                                           UNITED STATES DISTRICT JUDGE